1

2

3

4

5

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ~~ALL COUNSEL~~ Plaintiff
~~(OR PARTIES)~~ AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____3·7·12_____

DEPUTY CLERK
( w/ copy of CV-09 per instructions )



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR - 7 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

| | |
|---|---|
| ANTHONY VASQUEZ, | ) Case No. SACV 11-1968-DSF (JPR) |
| Plaintiff, | ) |
| vs. | ) ORDER DISMISSING FIRST AMENDED |
| | ) COMPLAINT WITH LEAVE TO AMEND |
| JESSE RUBALCAVA et al., | ) |
| Defendants. | ) |

17

18

19

20

21

Plaintiff filed this pro se civil rights action on December 30, 2011.  He subsequently was granted leave to proceed in forma pauperis.  On January 20, 2012, the Complaint was dismissed with leave to amend, and on February 17, 2012, Plaintiff filed a First Amended Complaint.

22

23

24

25

26

27

28

Plaintiff's claims purport to arise out of the events surrounding his arrest in November 2008, his subsequent detention, and his April 2009 trial for first-degree burglary and attempted burglary.  The FAC names as Defendants the arresting Los Angeles police officers, Jesse Rubalcava and B. Sforzini, in both their individual and official capacities; the Los Angeles Police Department ("LAPD"); and David Neville Haynes, a civilian

1

1  witness who called the police on Plaintiff and testified against
2  him at trial.

3       After screening the FAC in accordance with 28 U.S.C.
4  § 1915(e)(2) prior to ordering service, the Court finds that its
5  allegations generally fail to state a federal civil rights claim
6  upon which relief might be granted, in part because they appear
7  to be time barred.  Because the deficiencies of the FAC might be
8  capable of being cured by amendment, the FAC is dismissed with
9  leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th
10 Cir. 2000) (en banc) (holding that pro se litigant must be given
11 leave to amend complaint unless it is absolutely clear
12 deficiencies cannot be cured).

13                    **ALLEGATIONS OF THE FAC**
14      Plaintiff alleges that on November 23, 2008, he was waiting
15 near 1836 Laurel Canyon Road in Los Angeles to meet a friend when
16 he stopped to purchase items at a garage sale.  (FAC ¶ 8.)  While
17 carrying the items he had purchased to his van, Plaintiff was
18 stopped on the street by Defendant Haynes, who accused him of
19 stealing.  (FAC ¶¶ 9-10.)  Haynes threatened Plaintiff, and to
20 get away, Plaintiff climbed a wall into the yard of a nearby
21 house to find help.  (FAC ¶ 10.)  Plaintiff fell from the wall,
22 hurt himself, and was disoriented, and he crawled to the back
23 sliding door of the house to call for help.  (FAC ¶¶ 11-12.)
24 Plaintiff was spotted by a police helicopter and was then
25 arrested by Defendants Sforzini and Rubalcava.  (FAC ¶¶ 12-13.)
26 Plaintiff asked Defendants Sforzini and Rubalcava for medical
27 assistance, but they refused.  (FAC ¶¶ 13-14.)  Defendants
28 Sforzini and Rubalcava arrested Plaintiff for breaking and

                              2

entering, and Defendant Sforzini told Defendant Rubalcava, "I
will [show] you how to write [the police report] so it flies."
(FAC ¶ 14.)

Plaintiff was processed at the LAPD's Hollywood station,
where he again asked for medical assistance and was refused.
(FAC ¶ 15.)   The officers at the station threatened to put
Plaintiff "in isolation" if he continued to ask for medical help.
(Id.)

Defendant Sforzini's police report stated that a witness
(Defendant Haynes) observed Plaintiff walk alongside a house at
1836 Laurel Canyon that "appeared dark with nobody home" and peer
into the windows, and then Plaintiff entered the backyard.   (FAC
¶ 16.)   The police report "also stated that the suspect['s] arm
was inside the residence when [the police] entered the backyard"
and "there were no injuries."   (Id.)

Plaintiff's case went to trial on April 16, 2009.   (FAC
¶ 18.)   At trial, Defendant Haynes testified that he saw
Plaintiff "crawling up the driveway" and he "seem[ed] to be
intoxicated or injured."   (FAC ¶ 19.)   "He also stated that the
suspect was trying to break into the place."   (Id.)   Defendant
Rubalcava testified at trial that when found Plaintiff "was
facing the house," but after being impeached with his
preliminary-hearing testimony he testified instead that Plaintiff
"was facing away from the house."   (Id.)   Defendant Rubalcava
also testified that Plaintiff "appeared to be injured" and asked
for medical attention that was not provided.   (Id.)   Plaintiff
testified that he suffered the following injuries: "headaches
lasting about 3 weeks, sensitivity to light, tooth being broken

1  at the base of the gumline, [loss] of balance and ringing in the
2  ears."   (Id.)

3      On April 21, 2009, after just over two hours of
4  deliberation, the jury found Plaintiff not guilty of first-degree
5  burglary or attempted burglary.  (FAC ¶ 20.)  Plaintiff filed an
6  administrative claim "against the City of Los Angeles" on
7  December 17, 2010, which was denied on February 9, 2011.  (FAC ¶
8  21.)

9      Plaintiff brings the following causes of action against
10 Defendants Rubalcava, Sforzini, and the LAPD under 42 U.S.C.
11 § 1983:  (1) "Deprivation of Constitutional Rights Against False
12 Imprisonment and False Arrest," in violation of the Fifth and
13 Fourteenth amendments, and (2) "Deprivation of Constitutional
14 Rights Against Cruel and Unusual Punishment in denial of Medical
15 Attention," in violation of the Eighth and Fourteenth amendments.

16     Plaintiff brings the following causes of action against the
17 above three Defendants as well as Defendant Haynes: (1)
18 "Deprivation of Constitutional Rights Against Malicious
19 Prosecution," in violation of the Fourth, Fifth, and Fourteenth
20 amendments; (2) "Deprivation of Constitutional Rights Against
21 Conspiracy," in violation of the Fourth and Fourteenth amendments
22 and 42 U.S.C. § 1985; and (3) "Deprivation of Constitutional
23 Rights Against Defamation [of] Character in regards to Slander
24 and Libel."

25     Plaintiff requests the following relief: "Compensatory
26 Damage[s], including general and special damages, of an
27 unspecified amount," "Punitive Damages to be awarded along with
28 Actual Damages to be determined at trial," and "Any further

1 │ relief which the court may deem appropriate and proper." (FAC ¶¶
2 │ 47-49.)

### STANDARD OF REVIEW

4 │        The Court's screening of a complaint under 28 U.S.C.
5 │ § 1915(e)(2) is governed by the following standards.  A complaint
6 │ may be dismissed as a matter of law for failure to state a claim
7 │ for two reasons: (1) lack of a cognizable legal theory or (2)
8 │ insufficient facts under a cognizable legal theory.  <u>See</u>
9 │ <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
10 │ 1990).  A plaintiff must allege a factual and legal basis for
11 │ each claim sufficient to give each defendant fair notice of what
12 │ the plaintiff's claims are and the grounds upon which they rest.
13 │ <u>See, e.g.</u>, <u>Brazil v. U.S. Dep't of Navy</u>, 66 F.3d 193, 199 (9th
14 │ Cir. 1995); <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991).

15 │        In determining whether a complaint states a claim on which
16 │ relief may be granted, allegations of material fact are taken as
17 │ true and construed in the light most favorable to the plaintiff.
18 │ <u>See Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1989).
19 │ Moreover, when a plaintiff is appearing <u>pro se</u>, a court must
20 │ construe the allegations of a complaint liberally and afford the
21 │ plaintiff the benefit of any doubt.  <u>See Karim-Panahi v. L.A.</u>
22 │ <u>Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The "liberal
23 │ pleading standard," however, "applies only to a plaintiff's
24 │ factual allegations."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 330
25 │ n.9, 109 S. Ct. 1827, 1834 n.9, 104 L. Ed. 2d 338 (1989).  "[A]
26 │ liberal interpretation of a civil rights complaint may not supply
27 │ essential elements of the claim that were not initially pled."
28 │ <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir.

1   1997).   Further,

2         a plaintiff's obligation to provide the "grounds" of his

3         "entitlement to relief" requires more than labels and

4         conclusions, and a formulaic recitation of the elements

5         of a cause of action will not do. . . .   Factual

6         allegations must be enough to raise a right to relief

7         above the speculative level.

8   See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

9   1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal citations

10  omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.

11  1937, 1949, 173 L. Ed. 2d 868 (2009) (to avoid dismissal for

12  failure to state claim, "a complaint must contain sufficient

13  factual matter, accepted as true, to 'state a claim to relief

14  that is plausible on its face.' [citation omitted]   A claim has

15  facial plausibility when the plaintiff pleads factual content

16  that allows the court to draw the reasonable inference that the

17  defendant is liable for the misconduct alleged.").

18                              **DISCUSSION**

19  **A.    Plaintiff's claims appear to be barred by the applicable**

20  **       statute of limitations**

21        Federal civil rights claims pursuant to 42 U.S.C. § 1983 are

22  subject to the forum state's statute of limitations applicable to

23  personal injury claims.   Wilson v. Garcia, 471 U.S. 261, 279-80,

24  105 S. Ct. 1938, 1949, 85 L. Ed. 2d 254 (1985); Owens v. Okure,

25  488 U.S. 235, 249-50, 109 S. Ct. 573, 581-82, 102 L. Ed. 2d 594

26  (1989).   Federal law, however, determines when a claim accrues

27  and when the applicable limitations period begins to run.   Bagley

28  v. CMC Real Estate Corp., 923 F.2d 758, 760 (9th Cir. 1991).   A

1   cause of action accrues under federal law as soon as a potential
2   claimant either is aware or should be aware of the existence and
3   source of his injury.   Lee v. United States, 809 F.2d 1406, 1410
4   (9th Cir. 1987).   Here, Plaintiff claims the alleged
5   constitutional deprivations and injuries took place when he was
6   arrested in November 2008 and when he went to trial in April
7   2009.   He was aware of, or should have been aware of, his
8   injuries and the alleged constitutional deprivations at the time
9   those incidents occurred.   Thus, Plaintiff's claims accrued in
10   November 2008 and April 2009, and the statute of limitations
11   began running on those dates.

12       The California statute of limitations for personal injury
13   actions is two years.   Cal. Civ. Proc. Code § 335.1.   The
14   limitations period may be tolled while a plaintiff is
15   incarcerated, up to a maximum of two additional years.   See Cal.
16   Civ. Proc. Code § 352.1.[1]   According to the allegations of the
17   FAC, Plaintiff was incarcerated for a period of approximately
18   five months, from November 23, 2008, to April 16, 2009.   Thus, at
19   least with regard to any claims stemming from his arrest in
20   November 2008, Plaintiff would appear to be eligible for a five-
21   month suspension of the statute pursuant to California Code of
22   Civil Procedure section 352.1.   Thus, the statute appears to have
23   expired, at the latest, in April 2011 for claims arising from

25       [1]Section 352.1 provides, in part: "(a) If a person entitled to
26   bring an action, mentioned in Chapter 3 (commencing with Section
    335), is, at the time the cause of action accrued, imprisoned on a
27   criminal charge, or in execution under the sentence of a criminal
    court for a term less than for life, the time of that disability is
28   not a part of the time limited for the commencement of the action,
    not to exceed two years."

1   Plaintiff's arrest and that same month for claims arising from
2   Plaintiff's prosecution.  Plaintiff, however, did not file the
3   instant action until December 30, 2011, almost eight months after
4   the statute of limitations appears to have expired for all of his
5   claims, even with the additional statutory tolling.[2]

6        The statute of limitations is not jurisdictional; it must be
7   raised as an affirmative defense.  See Krug v. Imbordino, 896
8   F.2d 395, 396 (9th Cir. 1990).  Thus, the Court will not at this
9   time dismiss the FAC on that basis.  It appears, however, that
10  litigation of Plaintiff's action would likely be fruitless
11  because Defendants would successfully move to dismiss on the
12  ground that the action is time barred.  Accordingly, the Court is
13  attaching to this Order a form Notice of Voluntary Dismissal; in
14  case Plaintiff decides not to pursue this action, he may fill out
15  and file that form with the Court.

16  **B.   Plaintiff's claims against Defendant Haynes are barred by**
17  **the doctrine of witness immunity and because Haynes did not**
18  **act "under color of law"**

19       Plaintiff alleges three causes of action against Defendant
20  Haynes.  In his third cause of action, for malicious prosecution,
21  Plaintiff alleges that Haynes "conspired maliciously with the
22  officers to fabricate the police report for the purpose of
23  conviction of a crime that never was committed or in the act of

24

25
         [2]Plaintiff asserts that he had an administrative claim pending
26  against "the City of Los Angeles" (which is not a defendant in this
    action) for approximately two months, from December 17, 2010, to
27  February 9, 2011.  (FAC ¶ 21.)  Even if the limitations period were
    tolled for those two months, Plaintiff's action would still be time
28  barred by more than five months.

                                    8

1   committing." (FAC ¶ 35.)  In his fourth cause of action, for
2   "Deprivation of Constitutional Rights Against Conspiracy,"
3   Plaintiff alleges that Haynes "never saw [Plaintiff] riding any
4   bicycle or climbing any wall at the trial as is stated in the
5   report the Officers filed." (FAC ¶ 40.)  He also realleges that
6   Haynes "conspired maliciously with the officers" to prosecute
7   Plaintiff for a crime he did not commit. (Id.)  In his fifth
8   cause of action, for "Defamation [of] Character with regards to
9   Slander and Libel [in violation of] the Plaintiff's civil rights
10  granted to him under the 5th and 14th amendment of the
11  Constitution," Plaintiff alleges that Defendant Haynes defamed
12  him by calling the police on Plaintiff and by testifying against
13  Plaintiff at trial.  (FAC ¶ 45.)

14       Haynes was both a complaining witness, responsible for
15  helping to initiate the prosecution of Plaintiff, and a
16  testifying witness.  As for the latter, even accepting as true
17  the allegation that Haynes's testimony was knowingly false,
18  Plaintiff's claims against him as they relate to his trial
19  testimony are absolutely barred by the doctrine of witness
20  immunity.  See Burns v. Reed, 500 U.S. 478, 489-92, 111 S. Ct.
21  1934, 1941-42, 114 L. Ed. 2d 547 (1991) (witnesses absolutely
22  immune from damages for making false or defamatory statements in
23  judicial proceedings; immunity extends to any hearing before a
24  tribunal that performs a judicial function); Briscoe v. LaHue,
25  460 U.S. 325, 345-46, 103 S. Ct. 1108, 1121, 75 L. Ed. 2d 96
26  (1983) (Congress, in enacting § 1983, did not abrogate common-law
27  absolute immunity afforded to witnesses for alleged false
28  testimony in a judicial proceeding); Paine v. City of Lompoc, 965

1   F.3d 975, 981 (9th Cir. 2001) ("Witnesses, including police
2   witnesses, are immune from liability for their testimony in
3   earlier proceedings even if they committed perjury."); see also
4   Franklin v. Terr, 201 F.3d 1098, 1101-02 (9th Cir. 2000) (holding
5   that absolute witness immunity applies to conspiracy to provide
6   perjured testimony).

7        In certain limited circumstances, complaining witnesses –
8   those who help initiate prosecution – are not entitled to
9   absolute immunity.  A plaintiff seeking to raise such a claim
10  must allege facts sufficient to show that the witness acted
11  maliciously in "encouraging" the prosecution as opposed to
12  "simply report[ing] a crime." Franklin v. Fox, No. C 97-2443
13  CRB, 2001 WL 114438, at *3 (N.D. Cal. Jan. 22, 2001).  If the
14  complaining witness is a private party, the Plaintiff must also
15  sufficiently allege that the Defendant conspired with state
16  actors.  See United Steel Workers of Am. v. Phelps Dodge Corp.,
17  865 F.2d 1539, 1540 (9th Cir. 1989) (en banc).  A naked assertion
18  that a conspiracy existed, without more, is insufficient to state
19  a claim.  See Karim-Panahi, 839 F.2d at 626 ("A mere allegation
20  of conspiracy without factual specificity is insufficient");
21  Olsen v. Idaho St. Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004)
22  ("To state a claim for conspiracy to violate constitutional
23  rights, the plaintiff must state specific facts to support the
24  existence of the claimed conspiracy." (internal quotation marks
25  omitted)).

26       While Plaintiff alleges Haynes "conspired maliciously with
27  the officers" to prosecute him, he does not allege any facts that
28  would support the existence of such a conspiracy.  Indeed,

1   Plaintiff's bare allegation of a conspiracy is belied by the FAC
2   itself, wherein Plaintiff states that Haynes testified at trial
3   that he "never saw [Plaintiff] riding any bicycle or climbing any
4   wall . . . as is stated in the report the Officers filed." (FAC
5   ¶ 25.) If Haynes had conspired with the officers in a scheme to
6   falsely arrest and maliciously prosecute Plaintiff, he would not
7   have testified inconsistently with the officers at trial. Thus,
8   Plaintiff's conspiracy allegations are not plausible. <u>See</u>
9   <u>Weisbuch v. Cnty. of Los Angeles</u>, 119 F.3d 778, 783 n.1 (9th Cir.
10  1997) ("[A] plaintiff may plead [him]self out of court" if he
11  "plead[s] facts which establish that he cannot prevail on his
12  [constitutional] claim."). Setting aside pure legal conclusions
13  and focusing instead on the facts alleged in the FAC, Plaintiff
14  has not alleged that Haynes did anything other than report a
15  crime. These allegations are insufficient to state a claim
16  against Defendant Haynes under § 1983, the framework of all three
17  claims against Haynes. <u>See</u> <u>Goehring v. Wright</u>, 858 F. Supp. 989,
18  998 (N.D. Cal. 1994) (holding that private citizens who
19  complained to local authorities about neighbor's alleged
20  activities, giving rise to neighbor's arrest and prosecution,
21  were not "state actors" for purposes of § 1983).

22      For the reasons stated above, Plaintiff's claims against
23  Defendant Haynes are dismissed. Plaintiff is again cautioned
24  that to the extent Defendant Haynes is absolutely immune from
25  suit under the doctrine of witness immunity and is a private
26  citizen not acting under "color of law," any attempt to reallege
27  § 1983 claims against Defendant Haynes would likely be futile.
28  <u>See</u> <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 339 (9th Cir.

1  1996).

2  **C.      Plaintiff's claims against the LAPD and Officers Rubalcava**

3  **and Sforzini in their official capacity are insufficient**

4       Plaintiff's FAC alleges claims against Defendants Rubalcava

5  and Sforzini in both their individual and official capacities.

6  He has also sued a government entity, the LAPD.  A local

7  government entity may be sued under § 1983 only "when execution

8  of a government's policy or custom, whether made by its lawmakers

9  or by those whose edicts or acts may fairly be said to represent

10 official policy, inflicts the injury that the government as an

11 entity is responsible under § 1983."  See Monell v. N.Y.C. Dep't

12 of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L.

13 Ed. 2d 611 (1978).  Plaintiff may not sue the LAPD on a theory of

14 respondeat superior, which is not a theory of liability

15 cognizable under 42 U.S.C. § 1983.  See Iqbal, 129 S. Ct. at

16 1948; Polk Cnty. v. Dodson, 454 U.S. 312, 325, 102 S. Ct. 445,

17 453, 70 L. Ed. 2d 509 (1981).  An "official-capacity suit is, in

18 all respects other than name, to be treated as a suit against the

19 entity."  Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099,

20 3105, 87 L. Ed. 2d 114 (1985); see also Larez v. City of Los

21 Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is not

22 a suit against the official personally, for the real party in

23 interest is the entity."  Graham, 473 U.S. at 166.

24      The LAPD and its officers in their official capacities may

25 be liable for the acts alleged in the FAC only if "the action

26 that is alleged to be unconstitutional implements or executes a

27 policy statement, ordinance, regulation, or decision officially

28 adopted or promulgated by that body's officers," or the alleged

1  constitutional deprivation was "visited pursuant to a
2  governmental 'custom' even though such a custom has not received
3  formal approval through the body's official decision-making
4  channels." <u>Monell</u>, 436 U.S. at 690-91; <u>see also</u> <u>Redman v. Cnty.</u>
5  <u>of San Diego</u>, 942 F.2d 1435, 1443-44 (9th Cir. 1991).  Plaintiff
6  must show that "there is a direct causal link between a municipal
7  policy or custom and the alleged constitutional deprivation."
8  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197,
9  1203, 103 L. Ed. 2d 412 (1989).

10      Here, Plaintiff has failed to identify any existing policy,
11 custom, or practice established and utilized by the municipal
12 Defendant the execution of which inflicted the various alleged
13 deprivations of Plaintiff's constitutional rights.  Indeed, in
14 his third claim alleging cruel and unusual punishment, Plaintiff
15 alleges that the officers acted in violation of the LAPD's policy
16 with respect to "medical treatment of unbooked arrestees," which
17 states that "[a]n officer having custody of an unbooked arrestee
18 who is, or complains of being, ill, injured or in need of
19 medication shall: Cause the arrestee to be examined at a
20 Department Jail Dispensary, a Los Angeles County Medical Center,
21 or a Department contract hospital."  (FAC ¶ 30.)  Plaintiff's
22 fifth claim provides only conclusory allegations of a municipal
23 custom: the LAPD "has a history of false reporting which is well
24 documented" and "continued today," and that "[i]n doing so, the
25 [LAPD] has created [its] own acceptance of this violation of
26 civil rights by making it customary."  (FAC ¶ 45.)  These types
27 of conclusory allegations are insufficient to state a claim for
28 municipal liability.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949-50; <u>see also</u>

1  Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149 (E.D. Cal.

2  2009) ("[I]n light of Iqbal, it would seem that the prior Ninth

3  Circuit pleading standard for Monell claims (i.e., 'bare

4  allegations') is no longer viable."); Haley v. Gipson, No. CV

5  11-787-AG(E), 2011 WL 838919 (C.D. Cal. Feb. 28, 2011)

6  ("Plaintiff has failed to allege facts from which one plausibly

7  could infer the existence of . . . a municipal policy, custom or

8  usage; Plaintiff's conclusory allegations are insufficient.").

9  Thus, Plaintiff's claims against the LAPD and Officers Rubalcava

10 and Sforzini in their official capacity must be dismissed.

11 **D.   Plaintiff's § 1985 claim fails to allege a conspiracy based**

12 **on bias against a protected class**

13      Plaintiff's fourth cause of action alleges that Defendants

14 Rubalcava, Sforzini, Haynes, and the LAPD engaged in a conspiracy

15 to "deprive[] the Plaintiff to the right of equal protection" by

16 filing a false police report and giving false testimony at trial,

17 in violation of 42 U.S.C. § 1985.  (FAC ¶ 40.)  Section 1985

18 prevents any "two or more persons in any State or Territory" from

19 engaging in a "conspiracy to interfere with civil rights."

20 Section 1985(3)[3] prohibits conspiracies to deprive "any person or

21 persons" of equal protection under the laws, equal privileges and

22 immunities under the laws, or the right to vote.  Any party

23 _____

24      [3]Section 1985 contains three subsections.  Section 1985(1)
   prohibits conspiracies to prevent a state officer from performing
25 his or her official duties.  Section 1985(2) prohibits conspiracies
   to obstruct justice by intimidating a party, witness, or juror in
26 any court proceeding.  Section 1985(3) prohibits conspiracies to
   deprive any person of equal protection of the laws.  Plaintiff does
27 not specify under which subsection he intends to bring his claims;
   however, based on the facts alleged in the FAC, it appears that §
28 1985(3) is the only applicable subsection.

1   injured as a result of a violation of § 1985 "may have an action

2   for the recovery of damages, occasioned by such injury or

3   deprivation, against any one or more of the conspirators."   42

4   U.S.C. § 1985(3).

5        To state a claim under § 1985(3), a plaintiff must allege

6   "(1) that some racial, or perhaps otherwise class-based,

7   invidiously discriminatory animus [lay] behind the conspirators'

8   action, . . . and (2) that the conspiracy aimed at interfering

9   with rights that are protected against private, as well as

10  official, encroachment."   Bray v. Alexandria Women's Health

11  Clinic, 506 U.S. 263, 267-68, 113 S. Ct. 753, 758, 122 L. Ed. 2d

12  34 (1993) (citations and internal quotation marks omitted).

13  "[T]he plaintiff must state specific facts to support the

14  existence of the claimed conspiracy."   Olsen v. Idaho State Bd.

15  of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal

16  quotations omitted).   Plaintiff must allege facts showing that he

17  was intentionally treated differently from others similarly

18  situated and that there was no rational basis for the difference

19  in treatment.   See Village of Willowbrook v. Olech, 528 U.S. 562,

20  564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); Barren v.

21  Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998).   Conclusory

22  allegations will not suffice.   See Iqbal, 129 S. Ct. at 1949;

23  Karim-Panahi, 839 F.2d at 626 (affirming dismissal of § 1985(3)

24  claim containing "legal conclusions but no specification of any

25  facts to support the claim of conspiracy").

26       Here, Plaintiff does not allege that any "racial, or perhaps

27  otherwise class-based, invidiously discriminatory animus [lay]

28

1  behind the conspirators' action." <u>Bray</u>, 506 U.S. at 267-68.
2  Thus, his § 1985 claim must be dismissed.
3                    *******************
4       If Plaintiff concedes his claims are barred by the
5  applicable statute of limitations, he may voluntarily dismiss
6  this action.  The Clerk is directed to provide to Plaintiff,
7  along with this Order, a notice of voluntary dismissal for
8  Plaintiff to fill out and file.
9       If Plaintiff desires to pursue any of the claims in the FAC,
10 he is ORDERED to file a Second Amended Complaint within 28 days
11 of the service date of this Order, remedying the deficiencies
12 discussed above.  The Second Amended Complaint should bear the
13 docket number assigned to this case, be labeled "Second Amended
14 Complaint," and be complete in and of itself without reference to
15 the original Complaint, the FAC, or any other pleading,
16 attachment, or document.  To the extent Plaintiff believes his
17 claims are not time-barred, Plaintiff should plead specific facts
18 in the SAC demonstrating how his claims fall within the
19 applicable statute of limitations or why the statute should be
20 tolled.  **Plaintiff is admonished that if he fails to timely file
21 a SAC, the Court will recommend that this action be dismissed
22 with prejudice on the grounds set forth above and/or for failure
23 to diligently prosecute.**
24
25 DATED: <u>March 7, 2012</u>
26                          JEAN ROSENBLUTH
                            U.S. MAGISTRATE JUDGE
27
28

                              16